# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DAVID SHEAD HUFFMAN,

      Petitioner,

v.                                                                            Case No. 8:23-cv-1700-WFJ-LSG

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

David Shead Huffman, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 12). Mr. Huffman filed a reply. (Doc. 18). After careful review, the petition is **DENIED**.

## I.    Background

In the early morning hours of July 21, 1985, Mr. Huffman broke into a woman's house, entered her bedroom, and raped her at knifepoint. At the time, he was on parole for a rape he had committed in 1972. *Huffman v. State*, 192 So. 3d 687, 688 (Fla. 2d DCA 2016). When the victim awoke around 5:00 a.m., Mr. Huffman was on top of her, "trying to cover [her] mouth and hold [her] hands over [her] head." (Doc. 12-2, Ex. 8, at 191). Mr. Huffman pulled out a knife and said, "I want you to see how serious I am." (*Id.* at 192). He then "gagged" the victim with a "hand towel," put a pillowcase over her head, and raped her. (*Id.* at 194-95). During the rape, Mr. Huffman said, "You feel violated, don't you.

1

You're thinking of calling the police, aren't you." (*Id.* at 195). After he ejaculated, Mr. Huffman used a "wire coat hanger" to tie the victim's hands behind her back. (*Id.* at 199, 202). He then left the house. (*Id.* at 202). The victim "never saw" Mr. Huffman during the attack. (*Id.* at 219).

Law enforcement arrived shortly after the victim called 911. (*Id.* at 209, 212). While the officers were still questioning the victim inside the house, the phone rang. (*Id.* at 212). The victim picked up the phone, but "no one responded." (*Id.* at 213). Approximately two weeks later, the victim received another phone call. (*Id.* at 215). She recognized the voice as belonging to her assailant. (*Id.* at 217). The caller said, "I don't trust you anymore," and asked, "How are you now?" (*Id.* at 215). Law enforcement ordered a "trap" on the phone and set up a tape recorder. (*Id.* at 217-18). One week after the second call, the victim received yet another call from the assailant. (*Id.*) This call was traced to the residence of Mr. Huffman's mother; she testified that Mr. Huffman lived with her at the time. (*Id.* at 353-54, 365-67, 370-71, 376, 605-06).

Law enforcement found a latent fingerprint on the victim's bedroom doorknob. (*Id.* at 307-08). The print was "identical" to Mr. Huffman's "left middle finger." (*Id.* at 491). A hair was recovered from the victim's bathrobe; it was "microscopically consistent" with a sample of Mr. Huffman's hair. (*Id.* at 418-19). The victim underwent a "rape kit" examination shortly after the attack, but no DNA testing was done because such tests were "not being routinely performed in . . . laboratories" in the mid-1980s. (*Id.* at 468-70). At trial, the victim made an in-court identification of Mr. Huffman's voice as the voice of her assailant. (*Id.* at 239).

The jury found Mr. Huffman guilty of sexual battery with a deadly weapon and armed burglary. (Doc. 12-3, Ex. 9). He was sentenced to life in prison. (*Id.*, Ex. 11). Following an unsuccessful direct appeal, Mr. Huffman filed several postconviction motions. *Huffman v. State*, 522 So. 2d 393 (Fla. 2d DCA 1988). In 2003, the postconviction court "ordered DNA testing of the collected evidence." *Huffman v. State*, 909 So. 2d 922, 922 (Fla. 2d DCA 2005). The results showed that Mr. Huffman "was a contributor to three separate instances of DNA evidence obtained from the original evidence in the case." *Id.* at 923. Accordingly, the court denied his request for a new trial, and that ruling was affirmed on appeal. *Id.* at 922-23.

In 2016, the postconviction court held that Mr. Huffman was entitled to resentencing due to "scoresheet errors" that "resulted in the imposition of a . . . life sentence." (Doc. 12-3, Ex. 38, at 1-2). The original guideline recommendation was life in prison. *Huffman v. State*, 611 So. 2d 2, 3 (Fla. 2d DCA 1992). The corrected guideline range was 27 to 40 years in prison.[1] (Doc. 12-3, Ex. 56). The court appointed counsel for Mr. Huffman and held a resentencing hearing in 2018. (*Id.*, Exs. 29, 55). At the hearing, Mr. Huffman admitted that he had raped the victim and called her house afterward. (*Id.*, Ex. 55, at 50-53). He claimed that he was "mad at the world at the time," and that he "came up in an environment where [he] thought women should be used." (*Id.* at 39, 43). The court resentenced Mr. Huffman to life in prison, departing upward from the guideline range

---

[1] The primary scoresheet error concerned the scoring of Mr. Huffman's 1972 rape conviction. That conviction was technically a "capital offense, and capital offenses were not scored as a prior record under the sentencing guidelines." *Huffman*, 192 So. 3d at 689. The original scoresheet "improperly assesse[d] 264 points as a 'life felony'" for the 1972 rape conviction. *Id.* Despite this error, the prior conviction could be "a basis upon which the trial court could depart from the guidelines to impose a life sentence." *Id.* at 691.

based on his 1972 rape conviction. (*Id.* at 64-67). The life sentence was affirmed on appeal. (*Id.*, Ex. 63).

Next, Mr. Huffman moved for postconviction relief in state court, arguing that resentencing counsel was ineffective in various respects. (*Id.*, Exs. 64, 65; Doc. 12-4, Exs. 67, 78). Those efforts failed. (Doc. 12-4, Exs. 69, 76, 80). Mr. Huffman then filed his federal habeas petition, challenging his 1986 convictions for sexual battery with a deadly weapon and armed burglary.[2] (Doc. 1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] In 1990, Mr. Huffman sought federal habeas review of his 1986 convictions. (Doc. 12-4, Exs. 100-01). The district court denied his petition, and the Eleventh Circuit accepted counsel's *Anders* brief, finding no "issues of arguable merit." (*Id.*, Exs. 104-06). Respondent correctly concedes that, because Mr. Huffman "was resentenced in 2018, his current petition is not second or successive," nor is it untimely. (Doc. 12 at 5, 44).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

## B.    Ineffective Assistance of Counsel

Mr. Huffman alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Huffman must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Huffman must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III.    Discussion[3]

### A.    Ground One—Upward Departure Based on 1972 Rape Conviction

Mr. Huffman argues that the resentencing court violated the federal constitution by relying on his 1972 rape conviction to depart from the guideline range. (Doc. 1 at 15-18). As explained above, Mr. Huffman's corrected guideline range was 27 to 40 years in prison. (Doc. 12-3, Ex. 56). The court departed upward based on Mr. Huffman's prior rape conviction. (*Id.*, Ex. 55, at 64-67). Mr. Huffman contends that the upward departure was unconstitutional because his prior rape conviction was "void *ab initio*." (Doc. 1 at 17). According to Mr. Huffman, "rape against an adult" was a "capital crime" in 1972, meaning

---

[3] Respondent argues that certain claims are barred on procedural grounds, but "a federal court may skip over the procedural default analysis" where, as here, the "claim[s] would fail on the merits in any event." *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020). As explained below, each claim fails on the merits under *de novo* review.

that it could be charged only via "indictment by a grand jury." (*Id.* at 16-17). Instead, Mr. Huffman was charged by "information." (*Id.* at 16). As a result, the prior rape conviction was allegedly "void," and the resentencing court erred in relying on it to impose an upward departure.[4] (*Id.* at 16-17).

This claim fails for two reasons. First, except for prior convictions involving the "unique constitutional defect" of "failure to appoint counsel for an indigent defendant," there is no constitutional "right to attack collaterally prior convictions" at sentencing. *Custis v. United States*, 511 U.S. 485, 496 (1994); *see also United States v. Loomis*, 230 F. App'x 938, 939 (11th Cir. 2007) ("[A] prior conviction used for sentencing enhancement purposes is not subject to collateral attack in the sentence proceeding, absent a showing that the prior conviction was obtained in violation of the right to counsel."). Mr. Huffman does not allege that the court "fail[ed] to appoint counsel" in the 1972 case. *Custis*, 511 U.S. at 496. This means that he had no constitutional "right to attack collaterally" his prior rape conviction during the resentencing proceeding. *Id*. Therefore, the resentencing court did not violate the constitution by using that conviction to depart from the guideline range. *See Adelman v. Ercole*, No. 08-cv-3609-RJD, 2010 WL 3210718, at *3 (E.D.N.Y. Aug. 12, 2010) (state prisoner "not entitled to habeas relief" on allegation that trial court unlawfully enhanced sentence based on prior conviction that allegedly resulted from involuntary plea).

---

[4] Mr. Huffman has repeatedly challenged his 1972 rape conviction to no avail. (Doc. 12-4, Ex. 69, Attachment B, at 2-4).

Second, even if the resentencing court were required to entertain Mr. Huffman's collateral attack, he would not be entitled to relief. As noted above, Mr. Huffman argues that the 1972 rape conviction was "void" because he was charged by information rather than indicted by grand jury. (Doc. 1 at 16-17). The Fifth Amendment's Indictment Clause states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. But the "Fifth Amendment's grand jury indictment requirement is not applicable to the States." *Grim v. Sec'y, Fla. Dep't of Corr.*, 705 F.3d 1284, 1287 (11th Cir. 2013); *see also Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) (noting that "the Due Process Clause" "does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury"). Thus, the failure to indict Mr. Huffman in 1972 cannot support federal habeas relief. *See Jeffries v. Blodgett*, 5 F.3d 1180, 1188 (9th Cir. 1993) (capital defendant not entitled to habeas relief because "[i]ndictment by grand jury is not part of the due process guarantees of the Fourteenth Amendment that apply to state criminal defendants"); *Cutaia v. Sec'y, Dep't of Corr.*, No. 6:10-cv-1170-GAP-GJK, 2011 WL 4356160, at *16 (M.D. Fla. Sept. 19, 2011) ("Petitioner alleges that his Fifth Amendment rights were violated because he was not formally indicted by a grand jury for the offenses charged in the information. . . . This allegation fails to state grounds for habeas relief because there is no federal constitutional right to be tried upon a grand jury indictment for a state offense.").

**B.      Ground Two—Ineffective Assistance at Resentencing**

Mr. Huffman argues that resentencing counsel was ineffective in various respects. (Doc. 1 at 20-27). The Court considers each allegation of ineffective assistance in turn.

**1.      Failure to "Properly Challenge" Validity of 1972 Rape Conviction**

Mr. Huffman contends that resentencing counsel failed to "properly challenge and/or preserve" his claim that the 1972 rape conviction was "invalid." (*Id.* at 20). This argument is meritless. Before the resentencing hearing, counsel filed a "motion to vacate judgment" in the 1972 case, arguing that the prior rape conviction "should be vacated" because Mr. Huffman was not indicted by grand jury. (Doc. 18-2 at 1-9). The court dismissed the motion as successive. (Doc. 12-4, Ex. 69, Attachment B). It explained that Mr. Huffman had unsuccessfully raised this challenge to his 1972 rape conviction "on multiple prior occasions." (*Id.* at 10).

Then, the day before resentencing, counsel moved to continue the hearing because he "anticipate[d] filing a renewed motion to declare the 1972 case null and void." (Doc. 12-3, Ex. 54, at 2). This motion would repeat the argument that the court "lacked jurisdiction" over the 1972 case because Mr. Huffman was not indicted by grand jury. (*Id.*) At the hearing, counsel argued that a ruling on his renewed motion to vacate was "a prerequisite for any fair and judicious . . . attempt[ ] to resentence Mr. Huffman." (*Id.*, Ex. 55, at 10). The court denied the "request for a continuance" and "proceed[ed] to sentencing." (*Id.* at 22-23). Counsel later renewed his motion for a continuance, reiterating that the validity of the "sentence back in [1972]" "should [be] addressed." (*Id.* at 63). The court declined to continue the hearing and resentenced Mr. Huffman to life in prison. (*Id.*

at 64-67). Counsel nonetheless filed the renewed motion to vacate in the 1972 case; that motion was stricken as successive while the life sentence was on appeal. (Doc. 12-4, Ex. 67, Order Striking Renewed Motion to Vacate Judgment and Sentence). The appellate court affirmed both the life sentence and the order striking the renewed motion to vacate. (Doc. 12-3, Ex. 63; *Huffman v. State*, 300 So. 3d 604 (Fla. 2d DCA 2020)).

As this procedural history makes clear, resentencing counsel made extensive efforts to challenge the validity of the 1972 rape conviction. Counsel filed two motions to vacate in the 1972 case, arguing that the prior rape conviction "should be vacated" because Mr. Huffman was not indicted by grand jury. (Doc. 18-2 at 1-9; *see also* Doc. 12-3, Ex. 54, at 2). Counsel also urged that resentencing in the 1986 case should await resolution of his collateral attack on the 1972 rape conviction. (Doc. 12-3, Ex. 55, at 10). These efforts were ultimately unavailing, but "the fact that a particular [tactic] was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010). Instead, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Allen v. Secy, Fla. Dep't of Corr.*, 611 F.3d 740, 751 (11th Cir. 2010).

Mr. Huffman fails to make this showing. He does not point to any plausible alternative strategy for vacating the 1972 rape conviction or barring it from consideration during resentencing.[5] Mr. Huffman argues that after the life sentence was imposed, counsel

---

[5] Mr. Huffman faults counsel for not arguing that "the 1972 life sentence was illegal" because the jury in that case lacked the option to "recommend[ ] . . . mercy by a majority vote." (Doc. 1 at 22-23). Counsel was not deficient for failing to raise this issue. Before counsel was appointed, the court in the 1972 case had repeatedly rejected the same argument, explaining that the issue had received "thorough briefing." (Doc. 12-4, Ex. 71, Order Denying Petition to Set Aside Sentence, at 3). "In light of these prior rulings,

should have "challenge[d] the use of the prior . . . rape conviction" by filing a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b). (Doc. 1 at 21-22). Rule 3.800(b) is used to correct "technical errors" in a trial court's "sentencing orders"—for example, the imposition of a sentence that "exceeds the statutory maximum," the improper assessment of "costs," or the "fail[ure] to award credit for time served." *Acosta v. State*, 399 So. 3d 1118, 1127 (Fla. 3d DCA 2024); *Rosado v. State*, 129 So. 3d 1104, 1108 (Fla. 5th DCA 2013). Mr. Huffman does not cite—and this Court cannot locate—any authority suggesting that Rule 3.800(b) is the proper vehicle to challenge a sentencing court's reliance on an allegedly infirm prior conviction. *Cf. Josephs v. State*, 86 So. 3d 1270, 1272 (Fla. 4th DCA 2012) ("[D]efendant cannot rely on a Rule 3.800(b)(2) motion to raise an issue involving the use of improper factors during sentencing."); *Pifer v. State*, 59 So. 3d 225, 228 (Fla. 2d DCA 2011) ("[A] claim of error in the sentencing process is not cognizable in a motion under Rule 3.800(b)."). Accordingly, Mr. Huffman fails to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."[6] *Strickland*, 466 U.S. at 689.

---

counsel's failure to rehash the same failed argument cannot be considered ineffective assistance of counsel." *United States v. Mena-Robles*, 4 F.3d 1026, 1034 (1st Cir. 1993).

[6] A Rule 3.800(b) motion was not necessary to preserve any issues for appeal because counsel objected to the denial of a continuance—and the refusal to address the validity of the prior rape conviction—at the resentencing hearing. *See Jones v. State*, 876 So. 2d 642, 645 (Fla. 1st DCA 2004) ("Sentencing errors are not reviewable on direct appeal unless they are preserved in the trial court, *either* by timely objection at sentencing *or* by a timely filed motion pursuant to Florida Rule of Criminal Procedure 3.800(b)." (emphasis added)).

### 2.    Failure to Require Prosecution to Produce "Certified Documentation" of 1972 Rape Conviction

Mr. Huffman contends that resentencing counsel was ineffective for failing to require the prosecution to present "certified documentation" of his prior rape conviction. (Doc. 1 at 24). Had counsel demanded "evidence to support the accuracy of" the prior conviction, he allegedly "could have made the case that" the 1972 rape conviction was "invalid." (*Id.*)

This argument fails. "When a defendant disputes a prior offense[,] the sentencing court must either require the State to produce corroborating evidence of the offense or not consider the offense." *Smith v. State*, 714 So. 2d 1152, 1153 (Fla. 2d DCA 1998). Here, counsel did not dispute the "accuracy" of the prior rape conviction. (Doc. 1 at 24). But Mr. Huffman fails to show that, had counsel objected, the prosecution would have been unable to produce "certified documentation" of the conviction. He does not allege that such documentation was unavailable, nor does he establish that the documentation was somehow inaccurate. Indeed, the 1972 rape conviction was affirmed on direct appeal, and Mr. Huffman's efforts to vacate the conviction have been unsuccessful. *Huffman v. State*, 301 So. 2d 815, 815 (Fla. 2d DCA 1974). Thus, Mr. Huffman "cannot establish prejudice because he cannot show that the [prosecution] would not have established his prior conviction" in the event of an objection. *Derring v. United States*, No. 3:11-cr-179-RJC-DCK, 2015 WL 4611979, at *5 (W.D.N.C. July 31, 2015).

### 3.    Failure to Raise "Miscarriage of Justice"

Mr. Huffman faults resentencing counsel for not pointing to a "miscarriage of justice" that allegedly occurred during the 1986 trial. (Doc. 1 at 24-25). According to Mr. Huffman, the verdict form was defective because it did not require the jury to "find that a knife . . . was used in the commission of the crimes of which he was accused." (*Id.* at 25). Because "there was no specific finding by the jury that a knife was used," the convictions for sexual battery with a deadly weapon and armed burglary were allegedly unlawful. (*Id.*)

Mr. Huffman's argument is meritless, so counsel was not deficient for failing to raise it. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

As noted above, Mr. Huffman was charged with sexual battery with a deadly weapon and armed burglary. (Doc. 12-2, Ex. 3). The court instructed the jury that, to convict Mr. Huffman of sexual battery with a deadly weapon, it needed to find that he "used or threatened to use a deadly weapon." (*Id.*, Ex. 8, at 734). The court explained that "a weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm." (*Id.*) In addition, the court instructed the jury that it should "find [Mr. Huffman] guilty of burglary while armed" if it determined that, "in the course of committing the burglary," he "was armed or armed himself within the structure with a dangerous weapon." (*Id.* at 738). A "dangerous weapon" was defined as "any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm." (*Id.*)

13

The verdict form gave the jury several options for each charge. It could find Mr. Huffman not guilty of sexual battery, guilty of sexual battery with a deadly weapon, guilty of sexual battery with threat to use force or violence likely to cause serious injury, or guilty of sexual battery with use of slight force. (Doc. 12-3, Ex. 9). Likewise, the jury could find Mr. Huffman not guilty of burglary, guilty of armed burglary, guilty of burglary of a dwelling, or guilty of simple burglary. (*Id.*) The jury ultimately found Mr. Huffman "guilty of sexual battery with a deadly weapon" and "guilty of armed burglary." (*Id.*)

This procedure complied with Florida law. "[V]erdict forms must specifically provide for a finding by the jury that the defendant was armed with a deadly [or dangerous] weapon." *Swain v. State*, 911 So. 2d 140, 144 (Fla. 3d DCA 2005). The verdict form in this case allowed for such a finding, and the jury elected to make it for both counts. (Doc. 12-3, Ex. 9). Mr. Huffman fails to cite—and this Court cannot locate—any authority for the proposition that a verdict form must allow the jury to specify whether a "knife" was used during the offenses. Regardless, "the failure to specify the type of weapon used could not have misled or confused the jury because there was no dispute as to the type of weapon used—the evidence only supported that a [knife] had been used." *Turbi v. State*, 171 So. 3d 787, 790 (Fla. 2d DCA 2015). Because the verdict form was proper, counsel was not deficient for failing to raise Mr. Huffman's meritless argument.

### 4.    Failure to Request Resentencing by "Original Judge"

Mr. Huffman argues that resentencing counsel was ineffective for failing to request resentencing by the "original judge" in his case. (Doc. 1 at 25). In 1986, Judge Andrew D. Owens sentenced Mr. Huffman to life in prison. (Doc. 12-3, Ex. 10). In 2018, Judge

Stephen M. Walker resentenced Mr. Huffman to the same term of imprisonment. (*Id.*, Ex. 55). Before resentencing, Mr. Huffman allegedly told counsel that Judge Owens—who remained on the bench—should "preside over the resentencing hearing because Judge Owens knew how such proceeding was to be properly conducted." (Doc. 1 at 26-27). According to Mr. Huffman, he was "entitle[d] to be resentenced by the judge who presided at his 1986 trial." (*Id.* at 26).

Mr. Huffman is not entitled to relief because he fails to establish prejudice—that is, "a reasonable probability he would have received a different sentence" had Judge Owens resentenced him. *Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 556 (11th Cir. 2015). Mr. Huffman does not allege that Judge Owens would have been more lenient than Judge Walker. Instead, he simply asserts that Judge Owens "knew how [the resentencing] was to be properly conducted." (Doc. 1 at 26-27). But Mr. Huffman does not elaborate on this assertion, nor does he suggest that Judge Walker could not "properly" conduct the resentencing. Thus, Mr. Huffman fails "to show a reasonable probability that [he] would have received a lesser sentence even if counsel had objected and secured resentencing before a different judge." *Hart v. Sec'y, Dep't of Corr.*, No. 8:16-cv-770-CEH-AAS, 2019 WL 367647, at *6 (M.D. Fla. Jan. 30, 2019); *see also Webster v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-cv-904-TJC-PDB, 2020 WL 6060960, at *17 (M.D. Fla. Oct. 14, 2020) ("Petitioner's argument that he was prejudiced because Judge Daniel imposed a harsher sentence than Judge Norton would have imposed is purely speculative. Petitioner has no way of knowing how Judge Norton would have sentenced him.").

### C.    Ground Three—Ineffective Assistance on Appeal from Resentencing

Mr. Huffman argues that, while the appeal from his resentencing was pending, appellate counsel should have filed a Rule 3.800(b) motion.[7] (Doc. 1 at 32). According to Mr. Huffman, counsel could have used such a motion to argue that the resentencing court improperly relied on his 1972 rape conviction to depart from the guideline range. (*Id.* at 29-32). As explained above, however, Mr. Huffman cites no authority suggesting that Rule 3.800(b) is the proper vehicle to challenge a sentencing court's reliance on an allegedly infirm prior conviction. *Cf. Hannum v. State*, 13 So. 3d 132, 135 (Fla. 2d DCA 2009) (holding that Rule 3.800(b) is "not the proper mechanism for preserving for appeal the issue of whether the court improperly considered certain factors in imposing sentence"). Moreover, counsel argued in his appellate brief that "[t]he trial court erred in sentencing [Mr. Huffman] to a departure sentence . . . without first addressing [his] claim that his 1972 prior conviction for rape . . . was a valid conviction." (Doc. 12-3, Ex. 60, at 7). In other words, counsel challenged the resentencing court's reliance on the 1972 rape conviction. In these circumstances, Mr. Huffman cannot show that "no competent counsel would have taken the action that his counsel did take." *Allen*, 611 F.3d at 751.

### D.    Ground Four—Ineffective Assistance at 1986 Trial and Sentencing

Mr. Huffman argues that counsel provided ineffective assistance during his 1986 trial and sentencing. (Doc. 1 at 34). For the reasons explained below, each assertion of ineffective assistance lacks merit.

---

[7] A Rule 3.800(b) motion may be filed "even while an appeal is pending." *Brooks v. State*, 969 So. 2d 238, 241 (Fla. 2007).

### 1.    Allowing In-Court Voice Identification

Mr. Huffman faults counsel for allowing the victim to make an in-court identification of his voice as the voice of the assailant. (*Id.* at 34-35). During cross-examination, counsel asked the victim whether she could "tell if [Mr. Huffman] was the man that did it" by "listen[ing] to [him] talk now." (Doc. 12-2, Ex. 8, at 227). She said she did not "know." (*Id.*) With the court's approval, counsel instructed Mr. Huffman to "make some statements" to the victim to see whether she recognized his voice. (*Id.* at 239). The statements were phrases the assailant had used with the victim during the rape and the phone calls. (*Id.*) Specifically, Mr. Huffman said, "I told you not to ask that. You want to call the police[,] don't you? Are you alone? I want you to see how serious I am. What is your name?" (*Id.*) After hearing these statements, the victim said, "That sounds like it to me." (*Id.*)

Mr. Huffman contends that counsel should not have allowed the victim to make an "impermissibly suggestive" voice identification. (Doc. 1 at 35). Even assuming counsel was ineffective, this claim fails because Mr. Huffman cannot show prejudice. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Mr. Huffman cannot make this showing. Even apart from the in-court voice identification, the prosecution presented "substantial evidence" of Mr. Huffman's guilt. *Fugate v. Head*, 261 F.3d 1206, 1224 (11th Cir. 2001); *see also McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) ("[T]he other substantial evidence of [petitioner's] guilt negates any possibility of prejudice resulting from his attorney's failure to subpoena the alibi witnesses."). After the rape, the assailant called the victim several times. (Doc. 12-2, Ex. 8, at 213-18). The last call was traced to the residence of Mr. Huffman's mother; Mr. Huffman lived with her at the time. (*Id.* at 353-54, 365-67, 370-71, 376, 605-06). Law enforcement recovered a latent fingerprint from the victim's bedroom doorknob. (*Id.* at 307-08). The print was "identical" to Mr. Huffman's "left middle finger." (*Id.* at 491). Finally, a hair was recovered from the victim's bathrobe; it was "microscopically consistent" with a sample of Mr. Huffman's hair. (*Id.* at 418-19). Given the strength of the prosecution's case, Mr. Huffman cannot show prejudice from the in-court voice identification.[8] *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of [petitioner's] guilt . . . makes it obvious that [he] cannot show *Strickland* prejudice.").

---

[8] Mr. Huffman separately contends that counsel should have sought to "exclude argument by the state that [he] had phoned the . . . victim" after the rape. (Doc. 1 at 35). But counsel had no basis to "exclude" such argument. "Logical inferences may be drawn from the evidence, and counsel is allowed to advance all legitimate arguments." *Thompson v. State*, 88 So. 3d 322, 324 (Fla. 4th DCA 2012). Even without the in-court voice identification, the evidence supported a "reasonable inference[ ]" that Mr. Huffman called the victim. *Gonzalez v. State*, 136 So. 3d 1125, 1143 (Fla. 2014). As noted above, at least one of the calls came from the house where Mr. Huffman stayed, and his fingerprint was found on the victim's bedroom doorknob.

### 2.    Failure to Object to Discovery Violation

Mr. Huffman faults counsel for not objecting when the prosecution called a "surprise . . . witness"—Donald Hartery—to testify about "rolling [Mr. Huffman's] fingerprints" in 1972. (Doc. 1 at 36). This claim fails for lack of prejudice.

Mr. Hartery rolled Mr. Huffman's prints in 1972. (Doc. 12-2, Ex. 8, at 479-80). Sgt. Edward Whitehead rolled Mr. Huffman's prints again in 1986. (*Id.* at 488-89; *see also id.*, Ex. 7, at 7-10). The "rolled prints" from 1972 were "identical to the rolled prints" from 1986. (*Id.*, Ex. 8, at 490). At trial, Sgt. Whitehead testified that he compared the latent print from the bedroom doorknob against both the 1972 prints and the 1986 prints. (*Id.* at 490-91). The latent print matched both sets of known prints. (*Id.*) Thus, even if Mr. Hartery had not testified and the prosecution had not introduced the 1972 prints, the jury still would have heard that the latent print matched the 1986 prints. In these circumstances, there is no "reasonable probability that, but for counsel's [failure to object to the alleged discovery violation], the outcome at trial would have been different." *Reed*, 767 F.3d at 1261.

### 3.    Failure to Move for New Trial Based on Verdict Form

Mr. Huffman argues that counsel should have moved for "a new trial" because the verdict form did not require the jury to determine whether a "knife" "was used or threatened to be used in the commission of the charged offenses." (Doc. 1 at 38). As explained above, the verdict form complied with Florida law by requiring the jury to determine whether Mr. Huffman used a deadly or dangerous weapon during the sexual battery and burglary. (Doc. 12-3, Ex. 9). No authority supports Mr. Huffman's assertion that the verdict form must also allow the jury to specify whether a "knife" was used during the offenses. In any event, "the

19

failure to specify the type of weapon used could not have misled or confused the jury because there was no dispute as to the type of weapon used—the evidence only supported that a [knife] had been used." *Turbi*, 171 So. 3d at 790. Because Mr. Huffman's proposed objection is meritless, counsel was not deficient for failing to raise it. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim.").

### 4.    Ineffective Assistance at Sentencing

Lastly, Mr. Huffman argues that counsel was ineffective at the 1986 sentencing because he failed to (1) require the prosecution to provide "certified documentation" of his 1972 rape conviction, (2) challenge the validity of the prior conviction, and (3) argue that the life sentence he received for the prior conviction was "patently illegal." (Doc. 1 at 23, 39-40). "In light of his [2018] resentencing, [Mr. Huffman's] claim that his counsel at the [1986] sentencing was ineffective is moot." *Messer v. State of Florida*, 834 F.2d 890, 897 n.3 (11th Cir. 1987); *see also United States v. Green*, 425 F. App'x 843, 846 n.2 (11th Cir. 2011) ("[Defendant] also argues that his counsel rendered ineffective assistance during sentencing. That argument is moot because [defendant], who is represented by new counsel, is to be resentenced."); *Shores v. State*, 15 So. 3d 697, 698 (Fla. 1st DCA 2009) ("Our reversal for resentencing renders the ineffective assistance of counsel claim moot.").

## IV.    Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Huffman's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Huffman and to **CLOSE** this case.

3. Mr. Huffman is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Huffman must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Huffman has not made the requisite showing. Because Mr. Huffman is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on July 31, 2025.

**WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE**